Good morning, Ms. Vance, Mr. Wallace, sir. I'm Judge Dennis, together with Judge Willard, Judge Higginson, who will be your panel today. This is the case of Ames D. Ray v. Commissioner of Internal Revenue. We'll hear first from Ms. Vance. Good afternoon, may it please the court. 22 years ago, the IRS conceded that a business or a trading venture loss suffered by the appellant, Mr. Ray, was a deductible business loss. After Mr. Ray spent many years in legal dollars trying to recover that loss, the commissioner now wants to relitigate the characterization of that identical loss and to penalize Mr. Ray for relying on the prior tax court judgment. This case can be correctly, the majority of this case can be correctly resolved by simply holding the government to its word. Collateral estoppel should be appropriate here. The parties are the same, the controlling facts and law are unchanged. And the issue underlying the origin of the claim analysis here, the characterization of the 1993 trading loss is identical to the issue that was raised in the prior tax court proceeding. The government's only contrary argument, substantive argument, is that the prior tax court judgment was based on a settlement. But as this court recognized in Kitzburgh Wireworks and later in N. Ray Lacey, an agreed judgment can support collateral estoppel. In determining whether it should, the courts look at the party's intention as manifested in the agreement and the words of the record and the judgment itself to determine whether the party's intended finality on that issue. Here we can see that the party specifically agreed to characterize the trading venture loss as a business loss. The IRS statement of income changes, which is in the record at 1092, just behind the judgment, specifically shows as a line item, the trading loss as a deductible Schedule C business loss. The resulting adjustment to the tax that was owed by Mr. Ray at the bottom of that page corresponds exactly to the tax court's judgment. Ms. Vance, two questions on this threshold argument of issue preclusion. One is where would I find in the record your first presentation of it as an affirmative defense given to the tax court? In the pretrial submission, Judge Higginson, Mr. Ray raised this in two places. He first said that he anticipated that the effect of the prior trial court decision would be an issue. And later in that same submission on 59 of the record, he says, and I'll quote, as a result of the prior decision, the IRS conceded and the tax court confirmed that this loss was deductible as a Schedule C business loss. Therefore, the origin of this claim has been established in this court as a claim involving a legitimate business loss under section 162. And as briefs reflect, there were multiple other places where this issue was discussed in the briefing. And- And when you say the issue was discussed, be more precise. Did you argue that they were stopped from contesting it or did you just simply point to this event? No, Your Honor, from this quote and throughout the remaining briefing, Mr. Ray did advance this argument. He didn't expressly label it as a collateral estoppel argument, but this court and other courts have recognized that the labeling is not really germane, that it's what the argument is. And from this opening statement- So that was my factual question. I appreciate you giving me the record sites. The legal question is, you've seen the government's response and they cite our Schaumbaum case. And it would seem to me that in footnote three, where the court makes the comment, since the tax court decisions were agreed to, no issue was actually litigated. Yes, Your Honor. And that's the general rule. And it's understandable why that would be the case. If we can't really tell what was litigated, then we can't give it preclusive effect. But here, this isn't a case where we can't see whether or how the issue was addressed. And we can see in the statement of income tax changes and the tax court judgment exactly how the court and how the parties intended to treat this exact line item. If collateral estoppel either wasn't preserved or isn't applicable in our view, do you have a separate 162 argument? Yes, Your Honor. Even if this 22 year old concession, which was of course weighed and made by the IRS when these events were closer in time were not preclusive. If we are reviewing these unchanged events through an unchanged legal lens, the results should be the same. Mr. Ray has had a decades long career developing professional software. In fact, he was involved in this in the very early days in this sector. He developed several Wall Street targeted programs, including one that was worth several million dollars. The 1993 trading venture was just a continuation of that decades long business pursuit. The written agreement setting up the trading venture has at least two indicia of a business enterprise. First, the parties agreed that either or both could exploit the track record that was established by implementing the strategic trading strategies. And second, the parties agreed to share losses with Mr. Ray bearing the risk of the first tranche of losses and Christina Ray, the second up to $350,000. When I was looking at his testimony, especially the cross examination of him, he was impeached successfully, first stating that he was a trader in the venture and then acknowledging that he hadn't been. And the second time I thought he was impeached was when he urged that he had multiple motivations, some of them perhaps business-like, and then was retreated to what I'm sure you know the record was. He said, well, the goal here was to make money. And it then seems hard to disagree with the tax court's conclusion this was a one-time investment without being able to point to places in the record where he's putting in a substantial amount of time or whatever the phrase is, continuity and regularity of participation in this collaborative business. How would you respond to that? Well, Your Honor, first of all, with respect to your question about the statement that he made that this was not his primary motivation, when determining whether a pursuit is a business pursuit, there can be multiple motivations and they don't have to occur in any particular weighted order in fact, profit motive, which is a requirement for a business to be determined under the code, under 162, doesn't have to be the primary or even the sole or even the primary motive. So the fact that this was not his primary motive the ability to exploit this later was not his primary goal. It's not just positive. But doesn't the case law require, the phrase again that I focused on is continuity and regularity. And it didn't look like he did much other than the original investment. He had future hopes, but what else can we find in the record? Well, as to this particular endeavor, Your Honor, this is true that his role was to put up the money and then Mrs. Ray's role was to implement the trades and to develop a track record that either or both could use. But we're not looking at this trading venture as a standalone event. This was a continuation of Mr. Ray's decades long career as a software development professional. So it's not just this one off event. And it's not that he was a passive investor. His role in this was a different role. And as we've said in the briefing, this is not like that. It doesn't sort of fit cleanly into the passive investor cases where money's forked over the trading professional does the work and then at the end, Mr. Ray sticks out his hand and collects money. That's not the case here. It happens that many of those cases, of course, occur in a financial setting. Here, it happens that Mr. Ray just develops software for the financial industry. We've made the example in our briefing that we wouldn't rule him out as a part of a business enterprise if he were in the cattle breeding business or the restaurant location business just because he wasn't out on the ground picking out breeding pairs or trying to find McDonald's locations. In this case, his role was to make the investment. He had worked with Ms. Ray over time in developing these strategies and her role was to make the trades. If I could phrase Judge Higginson's question a little bit differently, you say in your reply brief on page six that Ray, quote, contributed his long-term expertise is how you phrased it. He contributed his long-term expertise project. And I guess I'm just wondering too, what sort of record evidence is there that supports the reply brief's assertion that he contributed his long-term expertise? Well, I will concede, Judge Willett, that the record in this particular case is terse. There are a lot of bits and bobs of deposition testimony from litigation that went on in New York between the parties and there's a little bit more conversation about what Mr. Ray did over time. But in this particular case, there had been discussion between Christina and Ames Ray about these strategic computerized trading strategies over time. And of course, everything fell apart and the wheels went off so we don't really know what would have happened at the end of the day. So what we saw very quickly happen was that he put the $500,000 up. It was agreed that they would see how things go. And then if they made what they hoped to be a successful track record, that either one or both could utilize that. What happened to the expert he proffered? The expert was proffered, Mr. Urban was proffered as a summary expert, Your Honor, because there was such a long, voluminous litigation history in New York. He was proffered to sort of summarize that. He was admitted and his report is in the record. I would say, I suggested to the court that it's useful in terms of giving kind of a summary of a very confusing litigation record, but the tax court did not rely on anything in that report other than as a summary. On the 212 expense approach, they did grant that as to the trading losses, but your argument here is that it should apply to the indebtedness losses as well and the litigation expenses from those. And am I oversimplifying it to say, then we would have to see that the various properties or the credit cards were investment income or rental income. Would that have to be in the record as opposed to personal residences? No, Your Honor, I think not. And let me just clarify that our argument is that the portion of the legal, the 2014 legal fees that were attributable to the business or the trading venture should have been categorized as 162 and that the remainder should be 212, categorized as 212. And so what we see is a series of interest bearing agreements that were entered into between these same businesses and business venture partners in the same timeframe and litigated in tandem with the trading agreement. Raised legal expenses as to those claims that were comprised in the first cause of action in the Ray-1 case were largely the real estate notes for the two New York properties and the credit card debt that were written, interest bearing, reaffirmed several times. All of the events that underlie those documents and all of the documents themselves and the litigation occurred many years after Christina and Ames Ray were divorced and the New York appellate court has recognized that they were long out of a personal relationship. So these are business endeavors and it's our position that Mr. Ray shouldn't be punished or penalized because he stayed on relatively good terms for a long time with his ex and they did business together. As we've stated on our brief, the relationship between the parties is also not dispositive of whether you're looking at a business or in this case, non-business income. Well, I'm sorry. Okay, but the two properties, one was a vacation home and the other one, whether they were married or not, they cohabited. In other words, I guess the question I'm asking is there anything in the record just to suggest that renters were paying the money related to either of those properties? No, Your Honor and I don't think that that's required. Some of the cases are circumstances like that where you have a realistic property that is producing income. Our argument here is that Mr. Ray owned at the end of this series of rather complicated transactions he had in his hand an income producing note on those properties and an income producing credit card debt. So- When you say income producing, you're focusing on the interest portion of it? Yes, Your Honor. And did you raise the Kelly versus Commissioner case to the tax court? Yes, Your Honor, we did. And we feel that this sort of collective body of this income stream, that Mr. Ray's legal funds or legal fees were directed to protect or preserve. And so that this should fall cleanly in this court's decision under Greene that the 2007 version of Greene, that these are assets. Well, Greene was a harder case for me. I do agree with you that Kelly seems very on point. It's a Seventh Circuit case, but it does. If you're correct, as you just stated that you brought it to the tax court's attention. I'm curious to hear if the government agrees with that. But Greene, that related to the man's employment. There's a much tighter nexus there to income stream. Whereas here, the only income stream that I see if we separate principal from interest is the interest payments. That's why I thought Kelly was much more on point than Greene. Do you see what I'm saying? And do you think I've got a flaw in how I'm thinking about this? No, Judge, and I think the flaw was in my answer. I didn't directly address your question, which was whether Kelly had been brought to the attention of the trial court. And I think the answer to that is no. In briefing, I came across that case and felt that it was directly on point. It is directly on point, but how, and good for you, and it was interesting. Maybe the government will say it isn't, but then what do we do with the waiver problem if the tax court wasn't presented with that divisibility? I think it's always the case, Your Honor, that our arguments evolve on appeal and our authorities get better or perhaps worse. And that's the case here. We did certainly advance the argument that all of these legal fees were either deductible as 162 or 212 fees. And so I think this was certainly preserved. And let me answer quickly your question also about the- Green case. Well, let's say the green case. Okay, so you raised an argument that the government brought up, which was that this was sort of more closely related to income because the underlying cause was an employment case. But I think that's a false narrative, Your Honor, because what was being litigated was protection and recovery of the actual interest bearing settlement. It just happened to be that it arose from an employment case. Thank you. I see that my time is up, so. Thank you. Ms. Wilson. You're up, Ms. Wilson, but you're muted. Thank you. Sorry. May it please the court. Thank you, Your Honor. Good afternoon. I'm Rachel Wolitzer presenting argument for the commissioner. The tax court correctly held that the expenses of litigating the trading agreement loss claim were not expenses of carrying on a trader business. As the tax court correctly found, and I quote from the task court opinion, the facts established that the purported business was in actuality Ms. Ray's management of a hedge fund and the petitioner's involvement in the management of that fund extended no further than his initial investment. In his deposition in the Ray 1 litigation, the taxpayer testified that any intention of assisting Ms. Ray with development of the trading models was tertiary and lower on his list of priorities. And I quote from the deposition, his purpose was to make money and to apply the commissions to reduce Ms. Ray's debt to him. In his deposition, he admitted that he was not a commodities expert and had no experience trading commodities. Ms. Wolitzer, I didn't hear opposing counsel stress too much this. The bigger point is the threshold one. And I think it relates both to the merits of the 162 issue as well as the penalty. If this gentleman, you know, didn't go get a preparer or an accountant or lawyer, but he was told by the IRS, they accepted in a stipulated decision that this was a business loss, why wouldn't there be preclusive effect from that stipulated decision? And at least why wouldn't that mean it's an honest mistake if he relies on what the IRS told him? Okay, thank you, your honor. Well, first of all, with respect to the merits of the trading agreement loss, as a matter of law, that stipulated decision is simply not preclusive. Taxpayer has cited no case establishing that a stipulated tax court decision based on a settlement is preclusive. Now it's true- And that's true in no circuit has that law? I haven't found any case that says that. And your best authority from our circuit is that the case that I mentioned, Sean Baum in the footnote? Well, the case that we cited in our brief, your honor. And the case law that we cited in our brief. And the decision document that opposing counsel has cited does not contain any analysis of the issue. It's just a line item list of what the items are that go into the computation of the stipulated decision. And I think it's very telling that that computation document lists the item as an item of a loss from the taxpayer as a futures trader. Well, that's a false premise. If the stipulated tax court decision for the 1993 case and the settlement that it was a part of was based on the taxpayers being a futures trader, well, that's a false premise. And it's unclear from the record how the IRS got that idea to put that in the computation document, but it certainly wasn't true. As I just stated, the taxpayer admitted in his rate one deposition that he was not a trader. He never traded commodities. So the collateral estoppel, as a matter of law on the merits, he cannot rely on that. Now, with respect to the penalty, okay, he had this stipulated decision. First of all, under the law, the most important factor for determining reasonable cause is the extent of the taxpayer's effort to assess his proper liability in light of all the circumstances. Well, reliance on the stipulated decision is just one factor. The taxpayer presented no other evidence that he made inquiries as to whether the... I guess- Decision was binding. Maybe I'm thinking a little like a taxpayer. Why would you make any other efforts if the IRS itself classified something? I wouldn't think you'd need to go to an accountant or lawyer because you're looking back and you're saying, well, they accepted it as a business matter. Well, he knew that it was a settlement. A settlement by definition is not a concession. It's not an admission. It's not saying you get this. It's saying, well, you get this and I get that. He was a sophisticated businessman and he should know what a settlement is and that a settlement is not a concession. In fact, the tax court made a finding that the taxpayer failed to carry his burden of establishing reasonable cause and good faith. This was a $230,000 deduction. The taxpayer had a stable full of attorneys handling his litigation with his ex. And it would have been very easy for him to ask the same attorneys whose expenses he was claiming whether these were deductible expenses. And there's no evidence that he did so. He was aware- It's not the government's position, is it? I don't believe it is, but clarify it for me. It's not the government's position that a penalty is justified anytime a taxpayer doesn't consult a professional either tax or accounting or legal when preparing a tax return. You're not arguing for that kind of bright line categorical rule, are you? If the taxpayer is arguing reasonable cause, the best way to establish that is by reliance on a professional. But again- And if they don't rely on a professional and if reasonable cause is the disputed legal issue, are you saying a taxpayer is negligent anytime they don't seek the advice of an attorney or an accountant? Well, I don't really think that the taxpayer thought that this was a disputed legal issue. He made a representation in the prior case that he was a futures trader. That representation was not true. He failed to present any evidence that of steps he took to ascertain whether this settlement in 93, which was a different tax year, gave him the right to deduct legal expenses in 2014. And in fact, the tax court expressly found, on the record before us, we find the petitioner's reliance on a stipulated decision for a different tax year as support for the position he took on his return does not constitute reasonable cause. The tax court- Did the tax court decision highlighted the false premise argument you're making? That's correct, Your Honor. But the tax court made a decision based on the evidence. It's a factual issue. And the taxpayer has the burden of establishing reasonable cause. Can you point us to any case where reasonable cause was denied when the reliance was on an earlier tax IRS classification? No, Your Honor, but the opposing counsel hasn't come up with a case where they could, where they did establish reasonable cause based on that. Again, the tax court found that the taxpayer did not have reasonable cause. That he did not reasonably rely on the stipulated tax court decision, that he incorporated the findings- No, he did find that. To me, it was the weakest part of the decision. And it seems to me the way to justify it would have to be nearly to say a bright line rule that you've got to speak to an accountant or lawyer to question whether even the IRS was right in what it told you was acceptable. That seems like a strong statement. Your Honor, the tax court made a factual finding. And in other parts of the decision, the tax court found that taxpayer's testimony was not credible. The taxpayer, it depends on whether taxpayer really did have reasonable cause and good faith. So at least in part, it's a subjective standard. The tax court just didn't buy taxpayer's claim that he had reasonable cause and reasonably relied on this opinion or on this consent decision, which he knew resulted from a settlement. It's a factual determination. What about the larger point, just factually, when you look at the whole record, it does seem his defense at the trial was sort of no good deed goes unpunished, right? Everything he was trying to do was collect monies that she had sworn to him every possible way under New York law, she would repay. So it looks to me in a way that everything post their divorce is clearly a business, a very losing business for him, but there was no interpersonal interaction. Okay, I just, go ahead. Oh, I'm sorry, Your Honor. I'd like to point out a few things from the record on the relationship. The evidence established that their divorce was for tax and professional reasons. They continued to live together as a couple in a relationship. They did not divide their assets and they continued to have joint bank accounts. The couple continued as a couple to live together as a couple until 1992 when the taxpayer moved to Florida. And most of the notes and the agreements were undertaken before the taxpayer moved to Florida. And the notes were not income producing notes because the purpose of the taxpayer in agreeing to the notes and the agreements was not to earn income. He claimed that Ms. Ray owed him this money and he made her give him the notes so that he could get this money that he felt she owed him. But is the test one of subjectivity? Whether he thought it would be income producing or is it just looking at the agreements and they were interest bearing and then that case that opposing counsel found, the Seventh Circuit case seems on point. Under section 212, the taxpayer must have a bona fide profit objective. So you do look at what is the taxpayer's objective? Is he just trying to collect money that he claims that his ex owes him or is he really trying to earn interest? There was no evidence, no testimony, no evidence that his purpose in extending these notes, extending these loans was to earn interest. Well, speak specifically to the Seventh Circuit case then. How would you suggest we distinguish that? Okay, well, in Kelly, and in fact, Kelly assists the government because in Kelly, the court held that the expenses for the recovery of the principal indebtedness were not deductible because he's not trying to recover income. He's just recovering what he loaned. Kelly did hold that the expenses for recovering the interest were deductible. So, because that was income. However, the taxpayer never made this argument. The taxpayer never argued that, well, we can get the litigation expenses for recovering the interest, but not the litigation expenses for recovering the principal indebtedness. The taxpayer had preserved that argument. Do you agree that under Kelly, then the taxpayer would be right? So, your argument reduces to a waiver and that's it, not on the merits. It's not really a question of waiver. It's a question of the facts in this case as well. Again, there was no evidence, even if we looked at the evidence, there was no evidence that there were separate litigation expenses that were attributable to the recovery of the interest. The interest was just incidental to his claims to enforce the notes and obtain recovery of the principal indebtedness. There was no evidence, no testimony, no documentation that he paid any additional litigation expenses in order to secure the interest. It was just his claims, his expenses were all incurred to recover the principal indebtedness and the interest would have come along with that as incidental to that. Now, getting back to the trading agreement, the taxpayer tries to paint this history at, well, I've been developing models for years. I'd like to quote from his deposition where he said on page 1162 of the record, quote, I don't remember spending much time developing programs and models between 1972 and 1993. So he admitted that he did not spend time developing models. The firm decision software that he claimed that he did write and that was the subject of subsequent litigation was a data analysis software program. It was not a commodities futures trading software program like the ones that Ms. Ray developed. It was a data analysis. It basically analyze SEC filings and produce reports based on those filings. It was a data analysis program. It wasn't trading models.  that the taxpayer actually did write those models programs for trading models. And in fact, when he was asked about statements at the deposition, when he was asked about statements in his tax court petition for 1993, in that petition, he made statements that from 1972 through 93, he and Ms. Ray had as a primary goal, the development of computer program models for trading financial futures. He was asked about the accuracy of that statement. And at his deposition, he responded, quote, I would say that's not so accurate. This is on page 1162 of the record. So it's clear if you look at the evidence, if you look at the deposition testimony, that the taxpayer did not have this long history or track record of developing models for trading commodities, which was the nature of the business. Rather, it was Ms. Ray's business to develop the trading models for trading commodities. And then Mr. Ray just invested his money. It was his commodities fund that she was trading. And it's possible he may have had an idea in his head. Well, maybe I can use these models someday. But the law requires a realistic prospect that he be engaging in this business. He did not have a realistic prospect that he would be trading and writing programs and trading and doing the things that Ms. Ray did in conducting the business. As you recognize, Judge Higginson, you have to be engaged in the business with continuity and regularity. He wasn't engaged in the business with continuity and regularity before he entered into the trading agreement in 93. And the trading agreement was not any extension of any kind of continuous and regular engagement in the business of writing programs for trading and developing models for trading commodities. Thank you. Some of the New York litigation is still pending, correct? And there was just a ruling in February of 2020. Would your view be that the New York litigation and those decisions, especially the February 2021 are of no relevance to the issues before us? Correct, Your Honor. Under the origin of the claim test, the validity of the claim is not determinative. And moreover, the tax court would not, and this court as well, would not be bound by any determinations made in those cases. The IRS- Would it matter that a New York court in that case was not really a fact finder while the tax court was acting as a fact finder in this case? Yes, Your Honor. Well, certainly the February decision was an appellate court decision, so it wasn't a fact finder. But even as to the trial court decisions, this court is not, this court isn't bound, the tax court isn't bound, the IRS wasn't a party to those cases. So those wouldn't be material or binding in any way. Thank you. Well, if the court has no further questions, I would like to stand on our briefs for the remaining of the issues. Just double checking my notes. So the tax court should be affirmed because it correctly held that the trading agreement losses were not a result of carrying on a trader business. And the claims for indebtedness were not for the production or collection of income pursuant to a bona fide profit objective. And the penalties were correctly imposed by the tax court based on the findings of fact. Thank you, Your Honors. Thank you, Ms. Wilson. Ms. Nance, you have five minutes on the vote. I have three points, Your Honor, time permitting. First of all, I think it's important to look at what was decided in 1993, regardless of how it was labeled, was a finite discrete event. The trading venture loss arising from the trading venture agreement, which is in the record. And it's not a type of deduction that might, you know, where circumstances might change, it is a loss. And it wouldn't have mattered whether they said on that line item characterization, giant disaster, business loss. The fact that it says it's a trading futures loss is absolutely irrelevant to this court's decision. It was characterized as a deductible 162 Schedule C loss based on facts that are fixed in time. It was a fixed transaction, a one-time thing. And that was 22 years ago, the loss was in 93, the decision came down in 97. And so I think that's very different than cases where you look at where we don't get preclusive effect. The IRS said, look, each year stands alone. Well, because that makes sense, things can change and the rules can change and maybe the IRS didn't pursue it one year, but now they'd like to. This was a one-time event, regardless of what we call it. And the characterization was the primary issue in that prior to a tax court litigation. And so at the time, speaking to the preclusive effect of that and also to reasonable cause at the time that Mr. Ray deducted his 2014 legal expenses, he had a 22 year old tax court concession that this was a trading loss, a deductible trading loss. He could not possibly, and it was based on an agreement with the IRS. He could not possibly have known that the IRS would take a completely inconsistent view years later. There's all of the many cases and Ms. Wollitzer mentioned all the lawyers that were around, but all of the many cases from this court and other courts puzzling over and parsing out race judicata illustrate exactly how confusing those principles are. And even if Mr. Ray, who's not an attorney, had known about or thought to rummage through those cases, as we just talked about, it's very unlikely that he would have found a case where the IRS successfully changed its position on a finite transaction, not a type of deduction, a finite characterization of a discrete line item transaction where no facts have changed, no law have changed. We didn't find one. Mrs. Wollitzer hasn't offered the court one. And so how can we put that type of burden on Mr. Ray? But what about in 2014? He wouldn't have ever thought that that 1993 characterization would have applied to the indebtedness claim, though. I beg your pardon, Your Honor? There's no reason, no reasonable cause for him to think that the 93 determination classification would apply to the indebtedness legal expenses. That's possible, Your Honor. I will say that these agreements were made in a contemporaneous timeframe. They were litigated together. Mr. Ray had deducted the credit card debt in 1992, which went unchallenged. So I think it is reasonable that he might have considered that they were business agreements. You had two other points you wanted to make before your time goes out. Well, so I sort of blurred my one point, but I will say that the relationship, the government has consistently tried to sort of paint this. And I will say that Ms. Ray's tried to paint this as some sort of long protracted divorce agreement. And it really doesn't matter one bit that the parties had some sort of relation going on. They divorced in 1977 for whatever the reason was. These were business agreements. All of these things happened thereafter. And if we decide otherwise, we're gonna be rummaging around in people's private lives, trying to figure out whether they had some sort of relationship. The enforceability of those agreements based on the relationship is nothing to do with the categorization of what went on. And here we have income producing assets that whether he meant to have income producing assets, he ended up with them, just like Mr. Green did in this court's 2009 decision. And I will point out, I believe the litigants and Kelly were actually brothers and sisters. So the relationship is just simply not relevant here. All of that's for the New York courts to decide. Again, the validity of the claim does not make any difference. I think that this court should find that the commissioner should be held to its word on its characterization of this identical loss. And at the least that it should find that Mr. Ray had reasonable cause to claim these deductions. Thank you, counsel for your good arguments. The case will be submitted. We will turn to the final case for argument today.